### DAVE WILSON v. THE STATE.

#### No. 2464. Decided April 15, 1903.

**1.—Continuance—Nonexpert as to Insanity.**

An application for continuance was properly overruled for a nonexpert as to insanity to prove, that for two or three days prior to the commission of the offense (assault to murder) defendant had been taking, as a medicine, large doses of tanic acid and other substances, from the effects of which defendant was temporarily insane, it not being shown, otherwise, that the witness could testify as to the acts and conduct of defendant upon which he might predicate testimony as a nonexpert on the question of defendant's insanity.

**2.—Assault to Murder—Charge as to Aggravated Assault.**

On a trial for assault to murder, by a husband on his wife, a charge upon aggravated assault was not called for where the evidence showed that the parties had quarreled; that the wife had left home because ordered to do so by the husband; that he subsequently went after her and endeavored to get her to return home, which she refused to do, whereupon he shot her and left her for dead.

**3.—Same—Charge as to Insanity.**

On a trial for assault to murder, a charge upon insanity, although uncalled for, was beneficial under the facts and defendant can not be heard to complain on this account.

Appeal from the District Court of Burleson. Tried below before Hon. Ed. R. Sinks.

Appeal from a conviction of assault to murder; penalty, five years imprisonment in the penitentiary.

The opinion states the essential facts.

*Davis & Hale,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of assault with intent to murder, and his punishment assessed at confinement in the penitentiary for a term of five years; hence this appeal.

The proof shows that the alleged assault was made by appellant on his wife; that they were not living happily together; that on the morning of the shooting they had a quarrel, and he told her to leave their home, and she did so. Subsequently he went to the house where she had gone, and insisted on her returning home. He started a quarrel with her there because she refused. She left the house, going in the opposite direction from their home. He accompanied her some distance until they got to a creek or branch. In the meantime he was quarreling at her and insisting on her going home. She refused. Just as they got to the edge of the branch appellant grabbed prosecutrix by the shoulder and whirled her around, and as she fell against him, he shot her in the breast, and then left her. She afterward got up and went to the neighbor's house where she had been stopping. There is also evidence in the case tending to show that shortly afterward he met one of the witnesses and told her that he had killed his wife. Subsequently, when he learned that she was not dead, he went to the house where she was and insisted on seeing her so that he could "finish her up." This was refused, and he then shot himself.

This is substantially the testimony for the State. Some testimony was introduced by the defendant which tends to show that a few days previous he had been taking a drink composed of hemlock and tanic acid, and his wife testified that he looked strange out of his eyes on the morning of the shooting, and he was quarreling with her at their home. An expert witness testified that a mixture containing 50 per cent extract of hemlock bark would be a very powerful and dangerous narcotic; a man who took such a mixture for two or three days in any considerable doses, if it did not kill him, would be practically delirious and irresponsible; it would affect the mind powerfully. This witness further testified that the effect of tanic acid on hemlock was to neutralize to some extent the effect of the latter, though to what extent he could not say. This was, in effect, all the testimony introduced by appellant, except that he proved by his wife that she did not believe defendant meant to shoot or kill her.

When the case was called for trial, the State announced "Ready," and appellant interposed a motion for continuance based on the absence of Amos Smith and J. S. Baker. Smith was present, and, of course, he is eliminated from the application. The diligence as to Baker was sufficient. Appellant stated he expected to prove by said witness that, for two or three days prior to the shooting of Jennie Wilson by defendant, he had been taking as a medicine large doses of a mixture of tanic acid and other substances unknown to defendant, but which are known to witness Baker, and that from the effect of said substances, from some cause, defendant was temporarily insane. It is not shown in the ap-

plication that said Baker was an expert. The application does not show any acts or conduct on the part of appellant to which said witness would testify on which he might predicate testimony as a nonexpert on the question of appellant's insanity. Nor does the application show that said witness was with appellant shortly before or at the time of the shooting, so that he might testify as to appellant's condition of mind at that time. The application would seem to be insufficient on this ground. In addition to this witness, Smith was present; and he testified that the mixture in question was composed of hemlock bark, about 50 per cent, and 40 per cent or 50 per cent of tanic acid, and some other ingredient. His wife testified that he had been taking the mixture for two or three days, and we do not understand that this matter was controverted by the State. Therefore we do not believe the court erred in overruling the application for continuance, or in refusing a new trial based on the court's action overruling said motion. Pruitt v. State, 30 Texas Crim. App., 156.

Appellant also complains because the court failed to charge on aggravated assault; that is, he contends that the evidence suggested an accidental shooting by appellant, and that the court, instead of giving a charge to acquit, based on such accident, should have given a charge on aggravated assault. We have examined the record carefully, and, in our opinion, there is nothing to indicate that the pistol was fired accidentally. As stated previously, the parties (appellant and his wife) did not live happily together, but were continuously fussing and quarreling. She left home on this account, and because she was ordered to do so by appellant. He subsequently went after her, and was endeavoring to get her to go home, which she refused, and he caught her, turned her around, and shot her, and then he left her for dead. There is no suggestion in this, so far as we discover, that he did not intend to do what he did, or that said pistol was fired by any character of accident.

We would observe that, while the court charged on insanity, we see nothing in the case to have authorized a charge on this subject. From the testimony, appellant's conduct appears to have been actuated by malice, such as is too often seen in difficulties between man and wife, in which no suggestion of insanity is apparent. He acted from a motive. While his wife says that in the morning he looked strange out of his eyes, there is no testimony which shows that at the time he was laboring under any species of insanity. Nor is there any testimony as to his conduct subsequently, except the fact that he shot himself when he was refused permission to enter the room where his wife was. We fail to see any insanity in the case. However, the court gave appellant the benefit of a charge on insanity, and he can not complain on this account. Howard v. State, 37 Texas Crim. Rep., 494.

There being no error in the record, the judgment is affirmed.

*Affirmed.*